### McCARTHY v. WESTFIELD PLATE CO.

#### (Circuit Court, D. Connecticut. July 8, 1903.)

#### No. 1,083.

1. PATENTS—INFRINGEMENT—CASKET HANDLES.

The McCarthy patent, No. 478,168, for improvements in casket handles, claim 1, construed, and *held* not infringed by the device shown in the Klein patent, No. 559,898.

In Equity. Suit for infringement of letters patent No. 478,168, granted to John McCarthy July 5, 1892.

Howard P. Denison, for plaintiff.
Harold Binney, for defendant.

PLATT, District Judge. Suit for infringement of letters patent No. 478,168, dated July 5, 1892, for improvements in casket handles. Heard on the merits on final pleadings and proofs.

The issue is on claim 1 of the patent:

"(1) The combination, with the handle, the arm carrying it, and the body plate to which said arm is hinged, of a relief bar connected to said arm, and passing through a slot in said plate, and provided on its inner end with a head."

124 F.—57

The defenses are invalidity and noninfringement. The former, however, is not seriously pressed. Our labors will be lightened if we devote ourselves assiduously to the latter. The plaintiff insists that his patent is entitled to a pioneer construction. The defendant denies this in toto, and claims that it is merely one of a long series of improvement patents relating to a relief device, which are intended to lessen the strain on the hinge pin, and thereby reduce the probability of unfortunate occurrences at funerals. He also contends that claim 1 of the patent in suit is void both for lack of invention and for double patenting, under the doctrine of Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121.

If the defendant is correct (and I am strongly disposed to agree with him in all his contentions, and especially in the first one), the case vanishes into thin air. Giving the plaintiff, however, the benefit of the doubt, and bringing to his aid the advantages which can be afforded by the broadest of constructions ever applied by any court to the most complete pioneer invention, he still fails to sustain his contention. It is not disputed that defendant makes the alleged infringing handle in exact accord with its own patent assigned to it by Klein, dated May 12, 1896, No. 559,898. That the examiner did not recognize the similarity between the two patents is plainly evident. The silence of the Patent Office during the pendency of Klein's application demonstrates that fact. The court is asked to find a similarity which escaped the observation of the trained observer at the Patent Office. I have searched for it in vain. The more one studies the situation, the clearer and more forceful become the very distinct and positive differences in the purposes, uses, and functions which are called into play by the two patents. The prior art lies in the middle between the patent in suit and the Klein patent. The former departs in one direction, the latter in the other. The patent in suit is the outcome of a struggle to relieve the hinge pin. The Klein patent is the outcome of a struggle to so strengthen the handle as to overcome the natural strain at the vital point. A careful reading of the specifications of the patent in suit can leave no doubt as to what the patentee thought that he had discovered as new and asked to monopolize:

"My invention relates to handles for boxes, trunks, caskets, and analogous receptacles, in which the handles are folded or shut down when not in use, and which are provided with means to relieve the hinge pin from part of the strain of the weight thereon.

"My object is to provide an improved fold-down handle, provided with a relief bar hinged to the handle or handle arm, and adapted to slide freely through and under the body plate when the handle is folded down and provided with a head larger than the opening through the plate, which is brought into contact with the inner surface thereof when the handle is raised, and then said relief bar will become an auxiliary support to the handle and to a certain extent relieve the hinge pin in the joint between the handle-bar and the body-plate from strain.

"My invention consists in the several novel features of construction and operation hereinafter described, and which are specifically set forth in the claims hereunto annexed. It is constructed as follows, reference being had to the accompanying drawings, in which

\* \* \* \* \* \* \* \* \*

"A is the body plate, preferably hollow inside, and provided with ears, a, in which the hinge pin, a′, is mounted in the usual manner, and also provided

with an elongated slot, a″, through its outer face, as shown in Fig. 3, or as shown in Fig. 7, when I use the downwardly extending arm secured rigidly to the handle arm.

\* \* \* \* \* \* \* \* \*

"A relief bar, c, curved substantially concentric with the hinge pin, has one end pivotally connected to the handle bar at c′, passes through the slotway; a″, and upon its inner end is provided with a head, c″, larger than said slot, as shown in Figs. 1 and 2; or I may use the arm shown in Figs. 5 and 6, rigidly secured to the handle arm. In either case, when the handle is folded down the bar will slide under the body plate, and be substantially concealed therein, and when it is raised said bar is drawn out through said slot until the head engages with the inner face of the body plate adjacent to the edges of the slot, and said bar then becomes and is an auxiliary support to the handle and a relief to the hinge pin, and if the hinge pin breaks it will then receive and carry the whole strain.

\* \* \* \* \* \* \* \* \*

"I do not limit myself to the hollow plate having an opening or slot therein, as it will be evident that the plate can be made full, and the recess made in the outer face of the casket body."

The English is plain and unambiguous. The only element in the combination described in claim 1 which the patentee considered in the least novel was a "relief bar connected to said arm, and passing through a slot in said plate, and provided on its inner end with a head"; and that head, by his own statement, must have been larger than the opening through the plate. If it were not larger, it could not have performed its function as an auxiliary support when the handle was raised and ready for use. The defendant's purpose, on the contrary, was, as expressed in the inventor's description, to get rid of the unsightly or expensive additional strengthening brace or supplemental handle. It used a sheet steel hinge construction throughout, placing the sheet steel strips on edge to obtain the greater resistance, and using the soft metal exterior partly for ornament and partly to support the steel sheets in position and to stiffen and support them against lateral strain. From any and every point of view, the defendant's handle arm produces all the strain that exists and relieves none. It is a simple lever of the first order. The fulcrum is the hinge pin; the force is applied at the long end of the lever when the handle is lifted; and the short end of the lever is the shoulder or projection which engages with the inner surface of the body plate. Nothing else can be found. There is no diagonal tension brace, no auxiliary support. The steel arm is the only "arm." The slot, too small for the head through which the arm is adapted to slide freely under the body plate when the arm is folded down, seems to have disappeared. The head is not larger than the opening through the plate. The broadest application of the doctrine of equivalents would not permit the patent in suit to be so construed as to make the main arm its own auxiliary, and to consider a construction which actually increases the strain upon the hinge pin an infringement of one which is expressly designed to relieve the hinge pin. If the defendant were compelled to sustain its contention beyond a reasonable doubt, it has done so upon the evidence presented in connection with the exhibit "Respondent's Exhibit No. 10, Strain Sheet of Handles."

Let the bill be dismissed, with costs.